[No. 14877.    Department One. — January 18, 1893.]

## SECURITY SAVINGS BANK AND TRUST COMPANY, APPELLANT, *v.* J. W. HINTON, CITY ASSESSOR OF LOS ANGELES, RESPONDENT.

TAXATION FOR MUNICIPAL PURPOSES — CONSTITUTIONAL LAW — MUNICIPAL CHARTER. — The authority given by the constitution to a city having over one hundred thousand inhabitants to frame and adopt "a charter for its own government," which "shall become the organic law thereof," authorizes such city to provide in its charter for taxation for municipal purposes.

ID. — LEGISLATIVE GRANT OF POWER — GENERAL LAWS. — The provision in section 12 of article XI. of the constitution, that the legislature may, by general laws, vest in the corporate authorities of municipal corporations the power to assess and collect taxes for municipal purposes, applies fully to municipal corporations formed under general laws, but does not render the enactment of a general law necessary to empower a city having a freeholder's charter to impose taxes for municipal purposes.

ID. — CONSTITUTIONAL GRANT — IMPLIED POWER OF MUNICIPAL TAXATION. — The constitution, in prohibiting the legislature from imposing taxes for municipal purposes, and in authorizing cities of sufficient population to adopt freeholders' charters, which the legislature cannot change or amend, vests in such cities, by necessary implication, the power of taxation, which is essential to municipal existence. The constitution further assumes by its various provisions that all municipalities, however chartered, shall have and exercise the power of taxation.

ID. — TAXATION OF SAVINGS BANKS — DEDUCTION OF LIABILITIES TO DEPOSITORS — GENERAL LAW — CONTROL OF MUNICIPAL TAXATION OF PROPERTY. — Section 3617 of the Political Code, subdivision 6, as amended in 1881, which provides that "credits, claims, debts, and demands due, arising, or accruing for or on account of money deposited with savings and loan corporations shall, for the purpose of taxation, be deemed and treated as an interest in the property of such corporation, and shall not be assessed to the creditor or owner thereof," is a general law declaring the general policy of the state upon the subject of taxation of savings and loan corporations, and must control a city ordinance providing for the taxation of property "taxable by law," regardless of whether there is or is not any conflict between the terms of the charter and the ordinance and the provisions of the code; and a loan and savings bank doing business in such city is not entitled to deduct from its solvent unsecured credits its unsecured liability to its depositors for moneys deposited for purposes of municipal taxation.

ID. — SPECIFIED INTEREST ON TIME DEPOSITS — DISTRIBUTION OF NET PROFITS — CONSTRUCTION OF CODE. — The language of section 3617 of the Political Code is broad enough to include savings banks which pay to depositors a specified rate of interest on time deposits, as in case of borrowed money, as well as those which distribute to depositors the net profits realized by the bank in proportion to their several deposits.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Graves, O'Melveney & Shankland,* for Appellant.

*C. McFarland,* for Respondent.

HAYNES, C. — Appeal from a judgment rendered in favor of defendant upon his demurrer to the complaint.

The complaint alleges, in substance, that plaintiff is a corporation, organized for the profit of its stockholders exclusively, with a capital stock of two hundred thousand dollars. The purposes of the corporation, as stated in its articles of incorporation, are as follows: "To receive deposits and pay interest on the same upon such terms and conditions as may, from time to time, be prescribed by its board of directors; to preserve and to safely invest the funds of its members and depositors in loans on real and personal property and all adequate securities, public or private, or in such manner, on such terms, at such rate of interest, and for such consideration as may be determined by the officers of the corporation under direction of the board; to sell, transfer, and assign its loans to individuals and corporations without recourse upon the corporation; and to receive funds from private parties and corporations for the purpose of loaning the same upon adequate security."

That in June, 1891, the plaintiff made out and delivered to the defendant, the city assessor of the city of Los Angeles, upon a blank furnished by the city, a statement of the property as it existed on the first Monday of March preceding, which statement showed that plaintiff had money and personal property amounting to $3,233; that there were owing to it solvent credits, unsecured, $58,002.50; due from banks and bankers, $6,424.23; and that there was due from the bank to depositors, *bona fide* residents of this state, unsecured debts for deposits of money with the plaintiff,

$407,926.90.   Mortgages to a very large amount were returned separately.

Plaintiff offered to pay the taxes upon $3,233,—its money and personal property,—but declined to pay upon $64,426.73, being solvent credits unsecured and moneys due from banks and bankers, claiming that it was entitled to deduct from its said credits the unsecured debts to its depositors, which amounted to a much larger sum.

The assessor demanded payment of taxes upon the whole sum of its personal property and unsecured credits, being $67,659.73, amounting to $805.12, which plaintiff refused to pay, and tendered $38.80, the amount assessed upon the personal property, whereupon the assessor seized the amount of the whole tax, $805.12, in money, appellant owning no real estate; and this action is brought to recover of the defendant that sum, less the taxes admitted to be due on the personal property.

Appellant presents two principal grounds, upon which it contends that the action of the defendant was illegal, and which, if sustained, must require a reversal of the judgment: 1. That the city of Los Angeles has no power to levy taxes; 2. That if it be conceded that the city has such power, the assessor had no authority to deny the deduction from its solvent credits of moneys due or owing to depositors.

1. The first of these propositions is based upon the fact that the charter of the city is what is known as a "freeholders' charter"; that the charter was approved by the legislature by resolution, and not by bill, and therefore, it is argued, is not a law, and that the existence of a *law* enacted by the legislature is essential to the exercise of the power to levy, assess, and collect taxes.

It is not necessary to reconsider the case of *People* v. *Toal*, 85 Cal. 333, cited by appellant. The question there presented was, whether the city of Los Angeles could create a police court and fix its jurisdiction, and the point of the decision was, that under section 1, article VI., of the constitution, the power to establish inferior courts

in any incorporated city or town was vested in the legis-
lature; and that by section 13 of the same article it was
enjoined upon the legislature to fix by law the jurisdic-
tion of any inferior court established in pursuance of
section 1.

In none of the several cases appealed to this court
touching the charter of the city of Los Angeles has it
been held that the charter was not properly adopted,
nor that it was invalid, though some of its provisions
have been held to be inoperative, because inconsistent
with certain legislative acts which were declared to be
"general laws." In *Brooks* v. *Fischer*, 79 Cal. 173, it was
said : "It is enough to say that the whole charter cannot
be held to be invalid because of the fact that a few of
its provisions may conflict with general statutes now in
force." And this language was repeated in *People* v.
*Toal*, 85 Cal. 333.

*Brooks* v. *Fischer*, 79 Cal. 173, was an application for a
writ of prohibition to prevent the respondent, the city as-
sessor of the city of Los Angeles, from proceeding to act as
such assessor under the charter here brought in question.
It was there alleged by the petitioner that the charter had
been approved by resolution, and not by bill, and was
not presented to nor approved by the governor; and the
third paragraph of the petition alleged "that the pow-
ers and duties of the city assessor in relation to the as-
sessment of property prescribed by the laws existing
prior to the framing of the aforesaid charter were other
than and essentially different from the powers and
duties provided in said charter"; and it was further al-
leged that respondent " threatens and is now proceeding
to assess all taxable property in said city, according to
and by virtue of the provisions of said charter," etc.
The petition was dismissed; and the effect of the de-
cision could not have been less than a determination
that the respondent was authorized to proceed in the
discharge of his duties as city assessor.

But appellant contends that, in the absence of a law
enacted by the legislature in the constitutional mode,

the city of Los Angeles has no power to levy taxes, and that no general law applicable to cities having " freeholder charters " has been passed for that purpose.

If no such general law has been enacted, there can be no conflict between the charter and such law; and it is only as to such conflicts that the validity of the charter has been heretofore questioned. But counsel's argument makes such general law the essential basis of the power of the city to impose taxes for municipal purposes.

This argument is based upon section 12 of article XI. of the constitution, which is as follows: " The legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, *but may, by general laws, vest* in the corporate authorities thereof the power to assess and collect taxes for such purposes."

But the authority given by the constitution to frame and adopt " a charter for its own government," which " shall become the organic law thereof," is comprehensive enough to authorize a provision, such as that contained in the charter of the city of Los Angeles, providing for taxation for municipal purposes. The legislature, however, was required by the constitution to provide by a general law for the incorporation of towns and cities that could not, for the want of sufficient population, or should not, for any reason, desire to adopt a freeholders' charter; and as to municipal corporations organized under such general law, the latter clause of the above-quoted section has full application; and as there is no act of the legislature relating to taxation for municipal purposes, except that contained in the Municipal Government Act, and which appellant correctly contends does not apply to cities having freeholders' charters, there can be no conflict between such charters and the general laws of the state upon this subject. As above remarked, in no one of the several cases has the validity, force, and constitutional authority of the Los Angeles charter for the exercise of all municipal powers been

questioned as to any provision not in conflict with some
general law, except in the Toal case, and the decision
was there based upon the constitutional provision
wherein the judicial power of the state is granted to
such inferior courts in any municipality as the legisla-
ture may establish.

It is undoubtedly true that the legislative branch of
the government has the exclusive power of taxation, ex-
cept so far as that power is restrained by the constitu-
tion, or delegated by the legislature or the constitution
to local municipalities.  But by section 12 of article
XI., above quoted, the legislature is *prohibited* from im-
posing taxes upon counties, cities, towns, or other mu-
nicipal corporations for municipal purposes.  It must
therefore follow that in authorizing freeholders' char-
ters, which the legislature cannot change or amend, the
power of taxation being essential to municipal exist-
ence, that power is necessarily implied.  In speaking
of municipal corporations, the supreme court of the
United States said: "When such a corporation is cre-
ated, the power of taxation is vested in it as an essential
attribute for all the purposes of its existence, unless its
exercise be in express terms prohibited." (*United
States* v. *New Orleans*, 98 U. S. 393.  See also *Ralls
County Court* v. *United States*, 105 U. S. 733; *Peoria etc.
R'y Co.* v. *People*, 116 Ill. 401.)  The implication of this
power, however, does not rest solely upon the power to
create and adopt a charter and the assent of the legis-
lature in approving it, but by the prohibition against
the imposition of such taxes by the legislature; and by
sections 13, 16, 17, and 18 of article XI., prohibiting the
delegation of power to special commissioners, private
corporations, companies, or individuals to exercise the
power of municipal taxation, requiring county and city
taxes to be paid into the treasury, prohibiting the mak-
ing of profit out of county, city, or other public moneys,
and restraining municipal indebtedness beyond the cur-
rent revenue without making provision therefor, the
constitution assumes that all municipalities, however

chartered, shall have and exercise the power of taxation.

We have considered this point somewhat at length because the question here presented was neither argued by counsel nor considered by the court in *Brooks* v. *Fischer*, 79 Cal. 173.

2. In support of its contention that appellant was entitled to deduct from its solvent unsecured credits its unsecured liability to its depositors for moneys deposited, several considerations are urged.

It is first insisted that if the charter vests the power to levy taxes, such power must be exercised strictly in accordance with the ordinances of the city, and that the ordinance upon the subject of taxation provides that the tax-payer may deduct from his solvent unsecured credits his unsecured debts owing to *bona fide* residents of this state, and that appellant was therefore entitled to the reduction claimed.

The fifth subdivision of section 4 of the city ordinance, which contains the foregoing provision, is a copy of subdivision 6 of section 3629 of the Political Code.

Section 46, article IV., of the charter (Laws 1889, p. 469), defines the duty of the city assessor, and declares that he shall "make out, within such time as may be prescribed by ordinance of said city, . . . : a full, true, and correct list of all the property, both real and personal, *taxable by law*, within the limits of said city," etc.

Section 1 of article XIII. of the constitution provides that *all* property in the state not exempt under the laws of the United States shall be taxed; that the word "property" includes moneys, credits, bonds, etc. The last clause is as follows: "The legislature may provide, except in the case of credits secured by mortgage or trust deed, for a reduction from credits of debts due to *bona fide* residents of this state."

The legislature in 1881 amended section 3617 of the Political Code, and the sixth subdivision thereof as amended, after defining the terms "credits" and "debts," concluded as follows: "But credits, claims,

debts, and demands due, arising, or accruing for or on account of money deposited with savings and loan corporations shall, for the purpose of taxation, be deemed and treated as an interest in the property of such corporation, and shall not be assessed to the creditor or owner thereof."

This section, and section 3629 of the Political Code as amended, and from which the above-mentioned city ordinance was copied, were approved and took effect the same day. It cannot be contended that the latter section was intended to repeal the provision above quoted from section 3617, or that it conflicted with it; and if that be true, it cannot be held that the ordinance above quoted could in any manner conflict with the charter provision requiring the city assessor to make a list of all the property "taxable by law."

We perceive no conflict between the charter and the ordinance, nor between the charter and ordinance and the provisions of the code; but if such conflict existed, we should be bound to hold that section 3617 of the Political Code declares, and was intended to declare, the general policy of the state upon the subject of the taxation of savings and loan corporations, and was therefore a "general law" in the broadest sense of the term, and as such would control.

In Dillon on Municipal Corporations, sec. 772, it is said: "So authority in the charter of a city to 'assess all *taxable* real and personal property within the city' refers to the general state law to ascertain what kind of property is subject to taxation, and the corporation has power to assess not only what was then taxable, but also whatever might afterwards be made subject to taxation by any general statute."

It is, however, contended that appellant does not come within the provisions of section 3617 of the Political Code, because the debts in question are not ordinary deposits in savings banks, but debts for borrowed money, repayable in the exact sum borrowed, with in-

terest thereon, irrespective of the profits or losses that may accrue to the bank.

· The learned counsel distinguishes between savings and loan associations which distribute to depositors the net profits realized by the bank in proportion to their several deposits, and those which pay to depositors a specified rate of interest on time deposits; that in the former class the depositors are, in effect, members of the corporation, and interested in its profits, while in the latter class they are creditors, and have no interest in the profits.

The language of section 3617, however, is comprehensive enough to include both classes, and we see no ground upon which we can say that the latter class was not intended to be included. All are organized under title X. of the Civil Code. Section 571 of the Civil Code is as follows: —

"Sec. 571. Corporations organized for the purpose of accumulating and loaning the funds of their members, stockholders, and depositors may loan and invest the funds thereof, receive deposits of money, loan, invest, and collect the same, with interest, and may repay depositors with or without interest. No such corporation must loan money, except on adequate security on real or personal property, and such loan must not be for a longer period than six years."

This section expressly authorizes such corporations to receive deposits, loan and invest the same, and repay depositors with or without interest, which is the mode in which appellant conducts its business.

We are not referred to any decision rendered since the amendment of section 3617 of the Political Code was adopted; but it is argued that that amendment was made immediately after the decision was rendered in *Burke* v. *Badlam*, 57 Cal. 594, which involved the taxation of the San Francisco Savings Union, which was of the first class of associations above mentioned, and that the amendment was therefore intended only to apply to those savings and loan associations in which depositors shared in the general dividend. In that case an effort was made

to tax both the bank and the depositors upon the same moneys; and it was held that that would be double taxation, prohibited both by the constitution and the statute. But the other provision of the constitution and statute, requiring all property to be taxed, was found to be equally imperative; and for the purpose of securing the taxation of all property of the character in question, and at the same time avoiding double taxation, the amendment of section 3617 of the Political Code was made. So far as the depositors are concerned, these deposits are not treated or taxed as solvent and unsecured credits, and therefore are not taxable to them; and being thus taken out of the category of credits, cannot be treated as liabilities by the bank for the purpose of reducing the amount of its solvent unsecured credits liable to taxation.

As savings banks are prohibited from loaning the money of depositors, except on adequate security, upon real or personal property, we must assume that the solvent unsecured credits reported by appellant were loans of its capital or profits upon personal security; and if its contention in this case should be carried out, savings banks with a capital paid in by its stockholders could always evade taxation upon its entire capital, so long as its savings deposits equaled or exceeded its capital, by converting its capital into unsecured credits.

We think the demurrer to the complaint was properly sustained, and advise that the judgment be affirmed.

BELCHER, C., and FOOTE, C., concurred.

For the reasons given in the foregoing opinion, the judgment is affirmed.

PATERSON, J., HARRISON, J., GAROUTTE, J.