### Stone, *Administrator, versus* Peacock.

In relation to an alleged sale of articles, if it be not shown that it was the intention of the parties to make the sale absolute and complete, the property does not pass so long as any act upon it remains to be done by them.

One, having purchased and paid for a specified quantity of an article, acquires no title to it, until separated from the residue.

Stone *v.* Peacock.

Until such separation, the claim of the vendee rests in contract, for a breach of which the remedy is by action.

A purchase of growing crops, though paid for, passes no title against the creditors of the vendee, until possession or delivery be had.

Unless such possession and delivery be had, prior to the death of the vendor and to the issuing a commission of insolvency upon his estate, the title is in the administrator in trust for creditors.

UPON FACTS AGREED.

TROVER for fifteen tons of hay.

In 1850, James Marston occupied a farm in Gardiner. On April 2, he conveyed to P. Sheldon all the crops, including the hay to be raised upon the farm, by a bill of sale under seal, it being agreed between them that Marston was to keep possession of the farm and manage it, and harvest and sell the crops; that Sheldon should pay all expenses attendant upon the raising and harvesting the same; and then should sell them, and after deducting for such expenses, and for a note of $100, which Sheldon had signed for Marston, pay the surplus to one of Marston's creditors.

The farm yielded about 45 tons of hay, which Marston cut and placed in the barn. He then asked the defendant to press it; but as Marston was known to be insolvent, the defendant refused to do it, unless secured for the service.

It was then agreed that the defendant should do the pressing at $1.75 per ton, and take pay in a bill of sale of fifteen tons of the hay, which was given as follows; " Edward Peacock bought of James Marston fifteen tons of hay, it being the same which said Peacock is now pressing in his, (Marston's,) barn — price, $8,00 per ton. Received payment by pressing. Sept. 21, 1850. James Marston."

The defendant pressed 45 tons, 598 pounds, in bundles of from 300 to 375 pounds, the weight being marked upon each bundle. These bundles, including said fifteen tons, were all packed up together in the barn. Marston requested the defendant to take his fifteen tons away, but it was neglected until after Marston's death in December of the same year.

The plaintiff was appointed administrator. The whole of the hay was inventoried and appraised as the property of Marston.

The defendant then, without the knowledge or consent of the plaintiff, took away the fifteen tons, for which this suit is brought. Upon the estate of Marston, a commission of insolvency has been issued.

*Danforth & Woods*, for the plaintiff.

*Evans & Clay*, for the defendant.

TENNEY, J. — The facts in this case being agreed, and no objection made to their competency, each must have its proper effect ; and from them the design of the parties is manifest. The plaintiff's intestate was insolvent, and consequently, the defendant was unwilling to perform the service desired by the other party without security or advance payment. The amount of the hay does not appear to have been known with certainty till it was pressed. A bill of sale absolute in its terms, for fifteen tons of the hay, was given to the defendant, the consideration of which was the work *to be* performed by him upon the hay. The price for pressing each ton was fixed by the parties, and nothing in the case tends to show, that this price was afterwards to be disregarded, or that there was to be substituted therefor a new contract for the performance of the labor, in consideration of one gross sum for the whole quantity, without reference to the exact amount. The purpose was, to give the defendant an opportunity to obtain compensation for pressing the hay without risk of loss.

The hay was pressed and piled together after this bill of sale was executed. If fifteen tons of it were the absolute property of the defendant, this would not be expected. Neither would it be natural, that Marston should pay the defendant for pressing his own hay, before the service was performed thereon. The form of the bill of sale does not preclude the hypothesis, that it was intended as security, or property, from which payment could be obtained after the work should be done, and the amount thereof ascertained. The case of *Warren* v. *Jewett*, 12 Mass. 300, is in this respect quite analogous to the one at bar.

Notwithstanding such was the character of the transaction,

the defendant was entitled, by virtue of the agreement, to have possession of the quantity of hay mentioned in his bill of sale. But it does not appear, that any delivery was taken, or that he had any other possession, than what was necessary to enable him to press it. Did the hay vest in the defendant, so that he had a perfect title, and was authorized to take it away? The rule of law in this respect seems to be well settled. When some act remains to be done, in relation to the property which is the subject of the sale, and there is no evidence to show any intention of the parties to make an absolute and complete sale, the performance of such an act is a prerequisite to a consumation of the contract; and until it is performed, the property does not pass to the vendee. *Riddle* v. *Varnum*, 20 Pick. 280. And a party having contracted for the purchase of a certain quantity of an article, and paid for the same, he is entitled to have the part purchased, separated from the whole quantity, but until such separation, he has no property in any specific quantity. *Young* v. *Austin & al.* 6 Pick. 280; *Merrill* v. *Hunnewell*, 13 Pick. 213. Until a delivery, actual or constructive, the claim of a vendee rests in contract for the breach of which the remedy is by action. *Brewer & al.* v. *Smith*, 3 Greenl. 44.

In the case before us, after the execution of the bill of sale, something was to be done further to complete the contract and transfer the property. There were forty-five tons, from which the fifteen tons, named in the contract were to be taken; no particular portion was designated as belonging to the defendant. The hay might have varied in quality, and it was probably of unequal value, and an important act remained to be done, in which both parties had the right to participate, unless this right was waived.

It is contended however, that the necessity of a delivery is superseded by the actual possession by the defendant. The plaintiff's intestate was never out of possession of the hay, till his death. The defendant appears to have had possession, for the sole purpose of the performance of the service which he had agreed to perform for Marston. The separa-

tion between the fifteen tons and the residue was not attempted, and the possession of the defendant did not abridge the prior right of the other party.

It is insisted, that the plaintiff's intestate waived the opportunity to assist in making the division, by the request to the defendant to take away his hay. If there was a certain specific number of bundles of the hay, agreed by the parties to be that of the defendant; or if it was a fact, that the hay was of uniform quality and value, and nothing remained to be done to vest the hay in the defendant, excepting to separate a certain number of the bundles, the request to take away that belonging to him, might have given him the right to do so, and the subsequent possession might be sufficient to perfect his title. But this request under the facts of this case by no means implies, that Marston waived all right to a voice in the selection of the hay, and intended to surrender the entire quantity mentioned in the bill of sale. But it is rather to be inferred, that the request was made that the parties might proceed to determine the price of the hay, which the defendant was entitled to receive, having regard to the quality; and to separate so much as the labor, at the sum agreed upon for each ton, would be worth. But nothing of the kind having been done the property did not vest in the defendant.

Was Marston so far divested of his interest in the hay by the agreement with Sheldon, that the administrator of his goods and estate had no authority to commence this action? This agreement is not a lease of the farm on which the hay grew, and Sheldon had no right whatever to the possession of the land. The object of the parties to this contract was, that Sheldon should have the crops, which were expected to be raised upon the farm. No possession was ever taken by him of the produce of the farm, either actual or constructive. If Sheldon had paid a *bona fide* consideration for the crops, perhaps he might have been entitled thereto, after they came into existence during the life of Marston. *Ludwig* v. *Fuller*, 17 Maine, 162. But the notorious insolvency and death

·of the plaintiff's intestate, together with the commission of insolvency, brought into the case his creditors as a new party; and they are represented by the plaintiff as administrator. The hay came to his hands after the death of the intestate, and the facts agreed are insufficient to enable Sheldon to divest this possession. He stands at least as a purchaser, not having taken delivery against the creditors of Marston, who had the property in possession by the administrator. *Waite, Appellant,* 7 Pick. 100; *Wildridge* v. *Patterson, adm'x,* 15 Mass. 148.                    *Defendant defaulted.*