[Filed October 27, 1890.]

## ROSENTHAL BROS., RESPONDENTS, *v.* KAHN BROS., APPELLANTS.

SALE—WHEN TITLE PASSES.—Ordinarily where there is a sale of goods by number, weight or measure, at so much a piece, a pound, a cord or bushel, it is necessary, in the absence of evidence showing a different intention, that the things should be counted, weighed or measured before the price to be paid can be ascertained. Before this is done, the sale is not so consummate and perfect as absolutely to change the property, but the goods still remain at the risk of the vendor.

CASE IN JUDGMENT.—Where R. agreed in writing to furnish K. 2,900 cords, more or less, of good, sound merchantable fir wood at the rate of $1.90 per cord, on board the cars at or between Clarnie or Fairview, said wood to be measured and received by the quartermaster at Walla Walla, W. T.; *held*, that the title to the wood did not pass to K. until received and measured by the quartermaster at Walla Walla.

APPEAL from Multnomah county: E. D. SHATTUCK, judge.

On April 30, 1888, the parties to this action entered into the following contract in writing:

"PORTLAND, Oregon, April 30, 1888.

'Know all men by these presents: That Messrs. Rosenthal Bros., parties of the first part, and J. Kahn, of Portland, Oregon, party of the second part, agree to furnish the said parties of the second part twenty-nine hundred (2,900) cords of good, sound, merchantable fir wood, more or less, said wood to be four (4) feet in length, and each cord to contain one hundred and twenty-eight (128) cubic feet, at the rate of one and ninety-one hundredths dollars ($1.90) per cord on board cars at or between Clarnie and Fairview; said wood to be received and measured by the quartermaster, United States Army, at Walla Walla, W. T.; and the said party of the second part agreed to advance the said party of the first part one and twenty-five one-hundredths dollars ($1.25) per cord for all wood delivered at any side of side-track on or before July 1,

1888, and the balance to be paid for when measured and received by the quartermaster at Walla Walla, W. T.; all wood to be at the risk of the said party of the first part until delivered to Oregon Railway & Navigation Company on board cars.                    "ROSENTHAL BROS.

"JACOB KAHN.

"Witness:

   "EDWARD P. PARKE,

   "H. N. PATTED."

This action is brought to recover the contract price for wood delivered under this contract; plaintiffs claiming and alleging that they delivered to defendants, as provided in said contract, 1,392½ cords of wood for which they have received $1,720, and no more,—leaving a balance due them of $924.80, for which they ask judgment.

The defendants claim that plaintiffs only delivered to them 1,114 cords, and no more, and that the balance is the sum of $396.66, which is more than offset by matters alleged in the answer by way of counter-claim.

A trial was had in the court below which resulted in a verdict and judgment in favor of plaintiffs for the sum of $854.30, from which this appeal is taken. ·

*Dolph, Bellinger, Mallory & Simon,* for Appellants.

*C. J. McDougall,* for Respondent.

BEAN, J., delivered the opinion of the court.

The question presented on the record in this case for our consideration is whether, upon the delivery of the wood on board the cars at the place designated in the contract, the sale became absolute and the title vested in the defendants, or was the sale conditional until the wood was received and measured by the quartermaster at Walla Walla. Upon this question the court below instructed the jury as follows: "Under the contract set out in the pleadings in this case, it was not the business of plaintiffs to procure any shipping receipt or other paper from the railroad company for the purpose of showing the amount of wood which they had

placed upon the cars when loaded; it was defendant's business to see that shipping receipts were properly made out if they wanted them made out at all; that was something with which the plaintiffs had nothing to do. When they put the wood on the cars they had nothing more to do with it. It was then delivered to the defendants. Under this contract the wood was at the risk of defendants from the time it was put on the cars, so far as concerns any loss which might result from railroad accident, fire or theft. and after it was placed upon the cars their liability ended; they had nothing more to do with it or responsibility for it." The giving of each of these instructions is assigned as error. The contention of plaintiffs is, that as soon as they delivered the wood on board the cars of the Oregon Railway & Navigation Company their duty was done, and they were under no obligation to do anything further under the contract, and the property in the wood immediately vested in the defendants; the act of measuring the wood by the quartermaster at Walla Walla being only the means of ascertaining the quantity in order that the amount defendants were to pay could be computed or determined, and was in no way essential to a change in the title.

The defendants, on the other hand, claim that the receipt and measurement of the wood by the quartermaster was a prerequisite to the consummation of the sale, and until it was done the title did not pass to them. It may be stated as a general rule that when some act remains to be done in relation to the property which is the subject of the sale, and there is no evidence to show any intention of the parties to make an absolute and complete sale, the performance of such act is prerequisite to a consummation of the contract, and until it is performed the title to the property does not pass to the vendee; as, when there is a sale of goods by number, weight or measure, at so much a piece, a pound, a cord or bushel, it is necessary, in the absence of evidence showing a different intention, that the things should be counted, measured or weighed before the price or consideration to be paid can be ascertained. Before

this is done the sale is not so consummate and perfect as absolutely to change the property, but the goods still remain at the risk of the vendor. *Riddle* v. *Varum*, 20 Pick. 280; *Wilkinson* v. *Holiday*, 33 Mich. 386; Benjamin on Sales, § 319; Baker on Sales, § 299; *Fuller* v. *Bean*, 34 N. H. 290; *Stone* v. *Peacock*, 35 Me. 388; *Graff* v. *Fitch*, 58 Ill. 373;[1] *Gibbs* v. *Benjamin*, 45 Vt. 124. Blackburn in his work on sales states the rule as follows: "When anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring, or testing the goods, when the price is to depend on the quantity of the goods, the performance of these things also shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted." Blackburn on Sales, p. 151. To this Mr. Benjamin adds another as follows: "When the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property in dispute depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." Benj. on Sales, § 320. "The principle is well settled," said Redfield, J., in the case of *Gibbs* v. *Benjamin*, *supra*, "and uniform in all the cases, that when anything remains to be done by either or both of the parties precedent to the delivery, the title does not pass. And so inflexible is the rule, that when the property has been delivered, if anything remains to be done by the terms of the contract, before the sale is complete the property still remains in the vendor. The contract must be executed to effect a complete sale and nothing further to be done to ascertain the quantity, quality or value of the property." Where no question arises under the statute of frauds, or the rights of creditors do not intervene, the question whether a sale is complete or only executory must usually be determined on the intention of the parties, to be ascertained from the contract, the subject matter and the surrounding circumstances. The

(1) 11 Am. Rep. 85.

parties may settle the matter by the express words of the contract, but if they fail to do so, we must determine, under the rules of law, what their intention was, and when this is ascertained it must govern and control.   If the goods sold are sufficiently designated so that no question can arise as to the thing intended, it has been held not absolutely necessary that the goods should be in a deliverable condition, or that the quantity or quality, when the price depends upon either or both, should be determined; all these circumstances having an important bearing in arriving at the intention of the parties, but no one of them or all combined are conclusive.   *Lingham* v. *Eggleston*, 27 Mich. 324; *Hatch* v. *Standard Oil Co.*, 100 U. S. 131; *Callaghan* v. *Myers*, 89 Ill. 566; Benj. on Sales, 239.

It is not disputed that when there has been a complete delivery of the property *in accordance with the terms of the contract of sale*, and nothing remains to be done by either of the parties in relation to the property to effect the transfer, the title passes, although there remains something to be done in order to ascertain the total value of the goods at the value specified in the contract.   *Burrows* v. *Whitaker*, 71 N. Y. 291; 27 Am. Rep. 42; *Graff* v. *Fitch*, 58 Ill. 373; 11 Am. Rep. 85.   There is also a line of authorities which hold that although a large and unknown quantity of goods may be sold by the foot, pound, or yard, yet if the vendor is not bound to weigh or measure before delivery, but delivers the whole to the buyer, the mere fact that the precise quantity is not then known, and so the whole price ascertained, does not prevent the title from passing.   These cases, however, proceed largely upon the ground that the particular contract did not require that the articles should be weighed or counted before the title should pass.   It is simply a question of the intention of the parties.   *Riddle* v. *Varnum*, 20 Pick. 280; Benj. on Sales, 267.   But when the goods are to be weighed or measured in order to ascertain the quality, or quantity, unless it appears that the intention of the parties was otherwise, the title will not ordinarily pass until such measuring or weighing is done.   It is not important who

is to do the weighing or measuring, whether the vendor or buyer or some third party, except as that fact may indicate the intention of the parties as to the time the title shall pass.    Thus in *Ward* v. *Shaw*, 7 Wend. Rep. 404, W. sold to C. a pair of cattle which C. was to take into his possession, slaughter them, take the quarters to market, weigh them and pay $7.50 for each 100 weight.    Immediately after C. took possession, his creditors attached the cattle as his, but the title was held not to pass before the slaughtering and weighing, things to be done by the vendee.    Applying these rules to the contract in suit, we are clearly of the opinion that the title to the wood did not pass to the defendants until it was received and measured by the quartermaster at Walla Walla.    This agreement being in writing must be held to contain all the terms of the contract, and the court must so interpret it as to carry out the intention of the parties as nearly as such intention can be determined in the light of the contract, the subject matter and the surrounding circumstances.    The pleadings admit that the wood was contracted for by defendants to be applied in fulfilling a contract which they had for supplying wood at the barracks at Walla Walla for the use of the United States, and that the plaintiff knew that such was the purpose for which defendants desired the wood at the time they entered into the contract, which explains the provisions of the contract providing that the wood should be received and measured by the quartermaster at Walla Walla, he, no doubt, being the person whose duty it was to receive and measure the wood the defendants were to deliver under their contract with the government.

Under this contract plaintiffs agreed to furnish the defendants 2,900 cords of good, sound, merchantable fir wood, more or less, at the rate of $1.90 per cord on board the cars at or between Clarnie and Fairview, to be received and measured by the quartermaster at Walla Walla. Here the price is stipulated in the contract for each cord, but quantity, more or less, agreed to be furnished as provided in the contract is to be ascertained by the quartermaster.

He, by this contract, is the person agreed upon by the parties to measure and ascertain the quantity of wood. As already shown, a contract is not executed and a complete sale effected while anything remains to be done to ascertain the quantity of the thing sold when the sale is by weight or measurement, unless a different intention is clearly shown. The number of cords of wood stipulated to be furnished in the contract is to be ascertained and determined by the measurement, so that after the wood was put aboard of the cars something yet remained to be done to complete the conditions of the sale: some subsequent acts were to be done by the quartermaster, acting by force of this contract, in order to ascertain the quantity of wood sold and the amounts defendants were liable to pay therefor. The defendants made no purchase of the wood as it was from time to time delivered aboard the cars, nor were they bound to take all the wood so delivered, but only such as fulfilled the terms of the contract. The wood was yet to be measured in order to ascertain this fact, and until so measured the title did not vest in them. So inflexible is this principle that unless it distinctly appears that it was the intention of the parties to treat the sale as complete before the ascertainment of the quantity, this is regarded as a condition precedent to the passing of the title.

Several cases were cited by respondents' counsel to the effect that where there is a valid contract of sale, a delivery to a common carrier according to the terms of the contract, vests the title to the property in the buyer. These were cases when goods had been purchased to be shipped by a common carrier, and nothing remained to be done by either of the parties in relation to the goods to effect a transfer of the title, and are not applicable to the case under consideration.

It follows, therefore, that the judgment below must be reversed and the case remanded for a new trial.