Decided 10 July, 1899.

## HAINES v. MCKINNON.

[57 Pac. 903.]

1. CONSTRUCTION OF BILL OF SALE OF GROWING CROP.*—A bill of sale of crops recited, in the usual form, the sale and delivery of a growing crop "by these presents," and added that the property was to be delivered at the buyer's warehouse at time of threshing. *Held*, that the intention was to pass title at once, but that the possession was to remain with the grantor until after threshing, when the manual delivery was to take place.

2. TRIAL—QUESTION FOR JURY.—The *bona fides* of a purported sale of an unmatured crop and the question of title to the property are for the determination of the jury, where there is an apparent ambiguity in the purported bill of sale arising from a provision requiring the grain to be delivered at the vendee's warehouse after threshing, and the latter testified that he bought the property at the time the bill of sale was executed, and that, although the property was to be so delivered to him, it was understood between the parties that the title had already passed.

From Harney : MORTON D. CLIFFORD, Judge.

This is an action by Fred Haines to recover from A. J. McKinnon the possession of certain wheat, oats, and barley, and the complaint is in the usual form. The answer puts in issue the material allegations of the complaint, and for a separate defense sets up that the defendant is the Sheriff of Harney County, Oregon, and that, as such sheriff, he attached said grain as the property of the defendant in a writ of attachment theretofore issued out of the Circuit Court of the State of Oregon for said Harney County, in a cause then pending in said court, wherein L. Woldenburg & Company was plaintiff and W. D. Martin was defendant, and now holds and detains the same under and by virtue of said writ. For a second separate defense, it is alleged that on the —— day of July, 1898, the said W. D. Martin was the owner of all the property described in the complaint; that at said date he was in-

*NOTE.—A very extensive note on the Sale or Mortgage of Future Crops is found with the case of *Dickey* v. *Waldow*, 23 L. R. A. 449.

See also note, Right to Crops After Mortgage Foreclosure, 65 Am. St. Rep. at pp. 624, 625; 72 Am St. Rep. at p. 609; 4 L. R. A. 453.—REPORTER.

debted to the said L. Woldenburg & Company in the sum of $400, and to divers other creditors in various amounts; that for the purpose of cheating and defrauding his creditors, and especially said L. Woldenburg & Company, he made a pretended sale of said property to the plaintiff in this action; that said sale was in fraud of the creditors of the said W. D. Martin; that in truth and in fact the said Martin never delivered said grain to the plaintiff, but remained and continued in the sole possession thereof until the date of the attachment; and that, therefore, said pretended sale was void, as against the attaching creditors. The alleged bill of sale, bearing date August 1, 1898, so far as it is material, is as follows: "Know all men by these presents, that I, W. D. Martin, of Harney, in the County of Harney and State of Oregon, party of the first part, for and in consideration of the sum of three hundred and fifty dollars, lawful money of the United States of America, to me in hand paid, at and before the ensealing and delivery of these presents, by Fred Haines, of Harney, Harney County, Oregon, of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, and delivered, and by these presents do grant, bargain, sell, and deliver, unto the said party of the second part, all the following goods, chattels, and property, to wit: All the grain now growing on my ranch, one mile southeast of the Town of Harney, Harney County, Oregon, consisting of oats, wheat, and barley, to be delivered at Fred Haines' warehouse, in the Town of Harney, Oregon, at time of threshing. To have and to hold the said goods, chattels, and property unto the said party of the second part, his heirs, executors, administrators, and assigns, to and for his own proper use and behoof, forever."

The plaintiff, taking the stand as a witness in his own behalf, testified, among other things, in substance, that

he bought of W. D. Martin his crop of grain growing on his place, consisting of wheat, oats, and barley, the first of August, 1898 ; that the said Martin was owing him about $375 upon a note and book account; that the account was getting to be of good size, so he told Martin he would like to have him settle it up in some manner ; that Martin told him he would sell him his crop of grain ; that the crop had not yet matured, but the yield was estimated, and that he bought the crop, and was to give Martin credit for it when it was hauled up after threshing ; that the bill of sale calls for it to be delivered when threshed ; that the witness was to pay Martin the ruling price, whatever the grain was worth per hundred,—was to pay by turning over the note, and giving him credit on the book account, and for any grain he received in excess of the amount of the note and account he was to give him credit at the store ; that witness was to pay the expense of harvesting and threshing, and certain expense in plowing and putting in the grain; that Martin made a bill of sale of the grain at the time, which was produced, Martin's signature identified, and introduced in evidence. On cross-examination he was asked if it was understood that he (Martin) was to remain in possession, to which he answered : "No sir ; the grain was mine." He then testified, as interrogated, in substance, as follows : "Q. The idea was this, wasn't it : That you were to take that grain, and pay certain claims out of it, that you have testified to, and pay yourself, and take this property for that purpose. That was the purpose of it, wasn't it? A. The purpose was that I bought that grain, just as I testified. Q. Then this instrument was given to secure the amount of $350? A. No, sir ; it was given as security for nothing. I bought the grain. Q. You were to take this property from him at the time he delivered it to you, and pay him for it at that time at

the market price?   A. The property was already mine.
*   *   *   He had already delivered it to me when I
bought it, as far as that is concerned.   He was to haul
it to town, of course.   Q. And when he hauled it to
town you were to take it?   A. Yes, certainly.   *   *   *
It was my property, though, when I bought it, but, of
course, we agreed to have it hauled to town." W. D.
Martin testified that he raised the crop of grain on his
place, and that he sold it to Haines the first of August,
and was to get whatever the going price was at threshing
time; that he was to be paid for it by a note which
Haines held against him, and in a book account which
stood against him at Haines' store; that Haines should
pay a Mr. Parker for some plowing done, and for the
threshing; that Haines directed him to go ahead and
oversee the threshing, and if there was any balance left,
over and above the note and account and these other
bills, he was to have credit for it at the store; that the
crop was threshed on the last day of August, and that
the note, amounting to $160, was turned over to him on
the last day of August or first of September; that a
portion of the grain had been put in sacks, and the rest
hauled to the granary on his place; and that, while in
this condition, it was attached, at the suit of L. Wolden-
burg & Company, the next morning after it was threshed.
George Shaw testified that he threshed the grain on
Martin's place, being the same as described in the com-
plaint; that he charged five cents per bushel therefor;
and that the plaintiff paid him soon after it was done.
This, in substance, is all the testimony of plaintiff
material to the issue; and, when he rested, the defend-
ant moved for a nonsuit, which being granted, and judg-
ment entered dismissing the complaint, plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Lionel R. Webster* and *Geo. W. Hayes*, with an oral argument by *Mr. Webster*.

For respondent there was an oral argument by *Mr. R. M. Turner*, with a brief over the name of *Biggs & Turner*, to this effect :

The instrument introduced in evidence by the appellant is a contract for a sale, and not a bill of sale, and the property did not pass from Martin to the appellant : *Lownsdale* v. *Hunsaker*, 2 Or. 101 (88 Am. Dec. 465) ; Benjamin on Sales, § 318 ; *Hull* v. *Pitral*, 45 Fed. Rep. 94.

When, by the agreement, the vendor is to do anything with the property for the purpose of putting it into a deliverable condition, or into that state in which the purchaser is bound to accept it, the performance of these things, in the absence of circumstances showing a contrary intention, is taken to be a condition precedent to the vesting of the property in the buyer; and when goods are sold by weight or measure, and when anything remains to be done for the purpose of ascertaining the quantity, in the absence of circumstances showing a different intention, the title does not pass until the goods are weighed or measured : *Hamilton* v. *Gordon*, 22 Or. 560 ; *Rosenthal* v. *Kahn*, 19 Or. 571 ; *Hubler* v. *Gaston*, 9 Or. 66 (42 Am. Rep. 794); *Riddle* v. *Varum*, 20 Pick. 280 ; *Wilkenson* v. *Holliday*, 33 Mich. 386 ; *Fuller* v. *Bean*, 34 N. H. 290 ; *Stone* v. *Peacock*, 35 Me. 388.

MR. CHIEF JUSTICE WOLVERTON, after stating the facts in the foregoing language, delivered the opinion.

1. The question for our determination is whether there was sufficient evidence to go to the jury from which they might infer that the plaintiff was the owner of the property which he seeks to recover. In order to establish his title thereto, he introduced the instrument of writing hereinbefore set out, and the testimony of himself, Martin, and Shaw. The instrument appears on its face, in one respect, to be a mere bill of sale, while there is couched in its terms an apparent ambiguity, arising from the provision which requires the grain "to be delivered at Fred Haines' warehouse, in the Town of Harney, Oregon, at time of threshing." In order to determine the legal effect of this instrument, it is necessary to take it by its four corners, and to ascertain therefrom, if possible, the purpose and intent of the parties at the time of its execution ; and, if that can be so ascertained, it is controlling: Tiedeman, Sales, § 83. In its formal parts, it purports to be a bill of sale, and recites a delivery of the property therein described. If nothing more had been added, the intention of the parties to transfer the title of the property by delivery of the instrument would have been obvious and unmistakable. But the clause heretofore referred to being inserted renders it, in a manner, ambiguous. We think, however, the true intendment, as gathered from the instrument itself, is that the title to the property should pass under it, but that the possession should remain with the grantor, and that he should thereafter, or when the crop had been threshed, deliver the same to Haines, and that the delivery referred to in said clause has reference merely to the delivery of possession, or the manual transportation of the grain from the place where threshed to the warehouse of the

plaintiff, and there deposited with him.   Hence, if such
instrument was·in fact delivered by Martin to the plain-
tiff at the time of its execution, it was effective to transfer
title to the property :    4 Am. & Eng. Enc. Law (2 ed.),
558.   As fraud has been set up as a defense, by the alle-
gation that the bill of sale was executed for the purpose
of defrauding the creditors of the said Martin, it was
necessary, of course, to show the actual execution and
delivery of the instrument, in good faith and for a valu-
able consideration, at a time prior to the attachment, as
the sale was presumptively fraudulent, possession having
been retained by the vendor.   It was proper, therefore,
for the alleged bill of sale to go to the jury as evidence
of the plaintiff's title, and the legal effect of the instru-
ment itself should have been declared by the court for
their direction.

2.   But, conceding the instrument to be so ambiguous
in its terms as to require evidence of the attendant and
surrounding circumstances, and *aliunde* as to the pur-
pose and intendment of the parties, there is unquestion-
ably enough in the record from which the jury could
legitimately infer and conclude that it was understood at
the time of the execution and delivery thereof that the
title to the property should also pass from the said Martin
to the plaintiff.   The plaintiff testified that he bought the
property at that time ; that Martin sold it to him, and
made him a bill of sale of it.   While the plaintiff has
said that the property was to be delivered to him at his
warehouse, yet he says also that the title had already
passed, and in fact that it was so considered by him and
Martin.   Clearly, the plaintiff produced sufficient evi-
dence to entitle him to go to the jury upon the *bona fides*
of the supposed sale by Martin to the plaintiff, and the
question of title to the property sued for, and there was
error in sustaining the motion for nonsuit.   The judg-

ment below must be reversed, and the cause remanded for such further proceedings as may be deemed advisable, not inconsistent with this opinion.          REVERSED.

MR. JUSTICE MOORE (dissenting).

Believing that the trial court could not say from an inspection of the memorandum executed by Martin to Haines that it was intended that the title to the grain should pass by the delivery of the instrument, and that such intention cannot reasonably be inferred from the testimony, I am relucantly compelled to dissent from the conclusion reached by my associates.   The words "sold and delivered," as used in the writing, ordinarily import a consummated contract, and if they were not qualified by the subsequent clause, "to be delivered at Fred Haines' warehouse, in the Town of Harney, Oregon, at the time of threshing," would undoubtedly be sufficient, in connection with the context, to evidence a transfer of the title :   *Memory* v. *Niepert*, 131 Ill. 623 (23 N. E. 431). True, the writing does not state who was to deliver the grain ; but, even if the words "delivered at" be construed as synonymous with "hauled to," it is fairly inferable, from an inspection of the writing, that Martin was to do this, otherwise the place of delivery would have been immaterial to him.   This construction would repel the idea that the contract was wholly executed.   It will thus be seen that this qualifying clause, tending to show that a future delivery by the vendor was contemplated, rendered the instrument ambiguous, and made it impossible for the court to construe it, in view of which parol testimony was admissible to explain the terms agreed upon : *American Contract Co.* v. *Bullen Bridge Co.*, 29 Or. 549 (46 Pac. 138).   The only question involved in this obscurity, however, is the intention of the parties as to whether

the title should pass by the delivery of the instrument:
*Hamilton* v. *Gordon*, 22 Or. 557 (30 Pac. 495); *Bangs* v.
*Friezen*, 36 Minn. 423 (32 N. W. 173).

Plaintiff, appearing as a witness in his own behalf,
states that the grain was delivered, and he became the
owner thereof, on the day the bill of sale was executed;
but it was agreed that Martin should receive credit on his
note and store account for its market value when it was
hauled to the warehouse.   Martin testified that at plain-
tiff's request he superintended the threshing, and in
answer to the question, "But in the event that the grain
had been destroyed before it was threshed, for instance,
or after it was threshed, before you delivered it, at the
time you were to determine the price, whose grain would
it have been?" said, "His, after I had the note."   That
the parties did not intend the title should pass until the
grain was paid for is evident from Martin's testimony,
and there is no evidence in the bill of exceptions tending
to show a different intention, unless it be Haines' state-
ment that he became the owner of the grain the day the
instrument was executed.   But this was a question which
the jury, in view of the ambiguity of the instrument, was
called upon to decide from facts which should have been,
but were not, proved at the trial.   The intention was a
question of fact, susceptible of proof; whether the title
passed was a question of law; and, since an inference
can only be founded upon a fact legally proved (Hill's
Ann. Laws, § 773), it is quite evident that no fair or
legitimate inference of the intention can be deduced from
Haines' opinion in relation to a question of law.   The
grain was growing when the writing was executed, and
therefore it was impossible for Haines to take manual
possession; and, this being so, no intendment can be
extracted from his testimony by which the jury could
conclude that he and Martin agreed at the time the

writing was executed that the title should pass with the delivery of the instrument. "Whenever a motion for a nonsuit is made," says Mr. Justice Lord, in *Herbert* v. *Dufur*, 23 Or. 462 (32 Pac. 302), "every intendment and every fair and legitimate inference which can arise from the evidence must be made in favor of the plaintiff." To the same effect see *Tippin* v. *Ward*, 5 Or. 453; *Southwell* v. *Beezley*, 5 Or. 458; *Grant* v. *Baker*, 12 Or. 329 (7 Pac. 318); *Hedin* v. *Suburban Ry. Co.*, 26 Or. 155 (37 Pac. 540); *Wallace* v. *Suburban Ry. Co.*, 26 Or. 174 (25 L. R. A. 663, 37 Pac. 477); *Vanbebber* v. *Plunkett*, 26 Or. 562 (27 L. R. A. 811, 38 Pac. 707). Giving to these decisions the liberal construction to which they are entitled, it would nevertheless seem that the instrument in question was not a bill of sale, and that, in view of plaintiff's failure to introduce testimony tending to show the intention of the parties thereto with reference to the transfer of the title, it would seem to follow that no error was committed by the trial court in granting the nonsuit; and the judgment, in my opinion, ought to be affirmed.                                        Reversed.