JOSEPH BARBER v. GEORGE G. THOMAS.

No. 13,030.   (71 Pac. 845.)

SYLLABUS BY THE COURT.

TITLE AND OWNERSHIP—*Personal Property.*  If it is the intent of
the parties to a contract of sale of personal property that the title
shall presently vest in the vendee, such intent will govern, and
ownership passes, although possession is retained by the vendor.

Error from Atchison district court ; W. T. BLAND,
judge.   Opinion filed March 7, 1903.   Affirmed.

*Waggener, Doster & Orr*, for plaintiff in error.

*Jackson & Jackson*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : Defendant in error sold to one George
W. Cole 1200 bushels of corn and gave to the latter a
bill of sale, as follows :

"HORTON, KANSAS, November 3d, 1898.

"Sold to George W. Cole twelve hundred, more or
less, bushels number three corn, at twenty-five and
one-half cents per bushel, to be delivered at his ele-
vator in Horton, Kansas, within ten days from date.

(Signed)   GEORGE G. THOMAS."

On the same day Cole assigned the contract to Bar-
ber, the plaintiff in error.   In December, following,
Barber paid to Thomas $200, on account of the pur-
chase-price.   In February, 1899, a constable holding
an execution against Barber levied on, and sold, 769
bushels of the corn as the property of the latter.   The
question is whether, under the contract between the
parties, title to the grain passed to Barber before the
levy and sale.   In response to particular questions of
fact submitted by plaintiff below, the jury answered :

"1.  Under the terms of the contract between

Thomas and Barber, was Thomas to shell and deliver the corn to Barber? A. Yes.

"2. At the time of the sale of the corn by the constable, had any of it been shelled and delivered to Barber? A. No.

"3. At the time of the sale by the constable, had the corn in the crib been measured and the number of bushels ascertained? A. No.

"4. Did Barber advance to Thomas $200 on account of said corn? A. Yes.

"5. Did Thomas then understand that, by the terms of his contract with Barber, he (Thomas) was to shell and deliver the corn to Barber? A. Yes.

"6. Was there ever any change in said contract whereby Thomas was relieved from his obligation to shell and deliver the corn to Barber? A. No.

"7. Did Thomas ever shell and deliver the corn to Barber? A. No."

The following particular questions of fact, submitted by the defendant, were answered by the jury :

"Ques. 1. Was it mutually agreed and understood between plaintiff and defendant, on and after November 3, 1898, that, upon the payment to defendant of $200, the right to ownership and title to the corn should be in and belong to the plaintiff; the corn to be shelled and delivered to plaintiff at his farm on the payment of the balance of the purchase-price? Ans. Yes.

"Q. 2. Was 769 bushels of the corn in the crib sold by the constable under execution against the plaintiff and as the property of the plaintiff on or about February 17, 1899? A. Yes.

"Q. 3. Was plaintiff present at a sale of 769 bushels of the corn in controversy, which sale was made by a constable under execution against plaintiff, on February 17, 1899, and bid for such corn? A. Yes."

Counsel for plaintiff in error contend that, because the corn was to be shelled by Thomas before its delivery to the purchaser, which was not done at the

time of the levy, no title had then passed.    The findings of the jury concerning what was to be done by the seller before delivery do not negative the first finding submitted by defendant below, which was that an agreement was made between the parties on and after the date of the bill of sale that, upon payment of $200 to the seller, the right of ownership and title to the corn should be in Barber.

In *Howell v. Pugh,* 27 Kan. 702, it was held :

"In a contract of sale of personal property, the intent of the parties controls, and if they intend a present vesting of title, the title may in fact pass at once to the purchaser, although the actual delivery thereof is to be made subsequently."

To the same effect, see *Kingman v. Holmquist,* 36 Kan. 735, 14 Pac. 168, 59 Am. Rep. 604; *Shepard v. Lynch,* 26 id. 377 ; *Bailey v. Long,* 24 id. 90 ; Burdick on Sales, 42, 43.

On the ground that the intention of the parties to pass title was clear, it was held that, where a buggy in an unfinished condition was bargained for, and the full price paid, but left in the maker's possession to be painted, the title at once passed to the buyer. (*Butterworth v. McKinly,* 11 Humph. [Tenn.] 206. See, also, *Paine & Gekler v. Young,* 56 Md. 314.)

In the *Elgee Cotton Cases,* 22 Wall. 180, 193, the rule of the cases above cited and quoted from was conceded. The court said :

"We do not deny that a person may buy chattels in an unfinished condition and acquire the right of property in them, though possession be retained by the vendor, in order that he may fit them for delivery. But in such a case the intention to pass the ownership by the contract cannot be left in doubt.    The presumption is against such an intention."

We do not regard that finding of the jury which states the nature of the mutual agreement between the parties as being a conclusion merely. The case of *C. B. U. P. Rld. Co. v. Henigh, Adm'r*, 23 Kan. 347, 33 Am. Rep. 167, is to the effect that, if the jury state the facts in detail and then assume to state them again as one comprehensive fact, the detailed facts will govern. Here the finding concerning the present nature of the contract which passed title is not contradicted by the others.

The judgment of the court below will be affirmed.

All the Justices concurring.