## MANGELSDORF BROS. CO. v. KOLP et al.

No. 5032—Opinion Filed May 1, 1917.

Rehearing Denied June 6, 1917.

(165 Pac. 1141.)

(Syllabus by the Court.)

**1. Sales—Passing of Title—Question for Jury.**

Where the question as to when title to personal property sold passed is in dispute, it is governed by the intention of the parties, and is generally a question of fact for the jury, under proper instructions; and should be taken from the jury only in cases where there is but one conclusion deducible from the evidence.

**2. Evidence—Self-Serving Acts—Suit.**

Where the vendee of personal property refuses to settle for the property purchased, but not actually delivered, and the vendor sues him for the purchase price, on the theory that though not delivered, title had passed, held, that the vendor cannot prove that after the vendee refused to settle for the property, he attached it as the property of the vendee; for the reason that the suit in attachment was the act of the vendor, not the vendee, and the vendee can in no way be bound by it. The vendee is bound by his own words and acts, but to permit the vendor to profit by his own independent act after the controversy had arisen would be, in effect, to countenance self-serving conduct, which the law will not permit.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by the Mangelsdorf Bros. Company, a corporation, against E. R. Kolp and D. C. Kolp, copartners. Demurrer to plaintiff's evidence sustained, and judgment against plaintiff for costs, and it brings error. Reversed and remanded for new trial.

Z. E. Jackson and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

Warren K. Snyder and Oliver C. Black, for defendants in error.

BRETT, J. This action was commenced in the district court of Oklahoma county by the plaintiff in error, a corporation, hereinafter called plaintiff, against the defendants in error, a copartnership, hereinafter called defendants, to recover the purchase price of two orders of cane seed, sold by plaintiff to the defendants, but never actually delivered, and for certain charges for the storage and insurance on these seed, and also some charges for turning or stirring the seed to prevent them from becoming heated while in the plaintiff's elevator. The plaintiff sued upon the theory that it had sold the seed to the defendants; that the contract of sale was an executed contract; that title had

passed; that the defendants were the owners of the seed; and that plaintiff was therefore entitled to recover the contract price of the seed under section 2862, Revised Laws 1910, which provides:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is vested in him, is deemed to be the contract price."

While the defendants contended that the contract of the sale was only executory, that title had not passed, and that their liability, if any, was not the purchase price, but was fixed by section 2863, Revised Laws 1910, which provides:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be:

"First. If the property has been resold, pursuant to section 3850, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale; or,

"Second. If the property has not been resold in the manner prescribed by section 3850, the excess, if any, of the amount due from the buyer, under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

At the close of the plaintiff's evidence the defendants demurred to the evidence, urging especially that the evidence failed to show that the contract of sale was executed, and that title had passed, but that, on the contrary, the evidence showed the contract to be executory, and that title had not passed, and the plaintiff was therefore not entitled to recover under its pleadings in this action. The demurrer was sustained, the jury discharged, and judgment rendered by the court against the plaintiff for the costs.

The principal question presented by this appeal is whether under the evidence the trial court erred in holding that the contract was executory; that title had not passed, and that the evidence therefore wholly failed to sustain the plaintiff's claim. The evidence is voluminous, and we will not undertake to go into a detailed statement of it, but will set out only such parts as are essential to a correct determination of the intention of the parties to this transaction. For, after all, the intention of the parties as to whether or not title should pass must, in this case, determine their legal status. The seed were purchased of the plaintiff by the defendants through the Merchants' Cheese & Brokerage Co., of Ft. Worth, Tex. The negotiations between the brokerage company and the defendants were oral, and plaintiff asked through the brokerage company that the sale be confirmed in writing, which request was communicated to the defendants by the brokerage company, and in response to this request the defendants replied by letter as follows:

"Ft. Worth, Texas, Jan. 20, 1909.

"Merchants' Cheese & Brokerage Co., Ft. Worth, Texas—Gentlemen: Answering your letter Jan. 19th, we find that we have purchased through you from Mangelsdorf Bros. Co. the following seeds:

Jan. 5th.    70,000‡ recleaned amber, at $2.72½ cwt.
            20,000‡ recleaned orange, at $2.72½ cwt.
            Delivered Group I our option.

Jan. 7th.    70,000‡ recleaned amber, at $2.72½ cwt.
            20,000‡ recleaned orange, at $2.72½ cwt.
            First half February shipment, shippers' option.

"All of above seeds to be recleaned, sacked in heavy new bags and delivered basis Group I, destination weights to be guaranteed by shipper and seeds to be true to name and to be bright, sound and sweet. We trust this is what Messrs. Mangelsdorf want and you may submit it to them with our approval.

"Yours very truly,

"E. R. and D. C. Kolp."

There is no contention on the part of the defendants that the plaintiff did not have the kind, character, and quality of seed specified in their letter of confirmation with which to fill their two orders. But the defendants, who purchased the seed to sell to their customers, were unable to sell them as readily as they had expected; and in response to urgent requests on the part of plaintiff that they move the seed, for the reason that the plaintiff's warehouse and elevator were crowded, defendants wired the plaintiff asking:

"At what price can you sell for our account enough seed to relieve present congestion?"

In response to this the plaintiff, by wire, quoted a price at which they could sell a portion of the seed. To this the defendants replied:

"We received your telegram this morning stating that you could sell 40,000‡ orange at $2.25, 50,000‡ amber at $2.20. We have not replied as this is at least 25c per cwt. under quotations from Kansas City, and we would rather pay you a little storage charges than to accept such ruinous prices at this time. You will understand our silence to mean that we do not care to sell at the above prices."

The plaintiff then wrote defendants, "We are paying storage on some of our own seed, crowded out of our warehouse by the seed we are holding for you," and stated that unless they could move the seed at once, they would have to pay storage on same. To which the defendants replied:

"Your letter Feb. 22nd received. We wrote you yesterday in reference to selling cane seed at $2.25 and $2.20 respectively. We are working on this matter and have a man out all the time. Just as soon as there is any trade, we will commence ordering this seed forward. Until then we must ask you to favor us by holding same. We will pay you a reasonable charge for storage, if you desire, upon it, but 1½c per bushel for the first month is unreasonable. We presume we will have no difficulty in agreeing upon a reasonable basis of storage when this matter comes up to be settled.

"Hoping we can give you shipping instructions in a very short time, we remain,

"Yours very truly,
"E. R. and D. C. Kolp."

This is the trend of a long correspondence between the parties, involving numerous letters and telegrams, until June 18th, when the defendants say, "We doubt very much if any liability will attach to us," and from then on they deny liability, but seek to compromise the matter; but the offer of compromise was refused by the plaintiff.

Both the plaintiff and the defendants in their briefs cite and quote from many reported cases in support of their respective positions; the one to show that the contract was executed, and the other that it was executory. But it must be borne in mind that each of the cases cited rests upon a state of facts peculiar to itself. And besides, the principal question we are called upon to determine in the case at bar is whether or not there was any evidence reasonably tending to sustain the plaintiff's contention that this was an executed contract, and that title had passed. If there was, then it was the duty of the court to have submitted this evidence to the jury. In Kirkham v. Fullerton et al., 32 Okla. 461, 122 Pac. 652, in discussing the question now under consideration, it is said:

"In contracts of this nature, when the dispute is between the parties to it, and no rights of other persons are involved, the question of the intention of the parties as to whether title to the property passed at the time of making the contract is often a controlling one, and is ordinarily a question for the jury. Haines v. McKinnon, 35 Or. 573, 57 Pac. 903; Sewell v. Eaton, 6 Wis. 490, 70 Am. Dec. 471; Barber v. Thomas, 66 Kan. 463, 71 Pac. 845; Rosenthal v. Kahn, 19 Or. 571, 24 Pac. 991; Ober v. Carson, 62 Mo. 213; Fletcher v. Ingram, 46 Wis. 191, 50 N. W. 424; Memory v. Niepert, 131 Ill. 623, 23

N. E. 431; Bill v. Fuller, 146 Cal. 50, 79 Pac. 592."

And we think it is the general rule that where the question as to when the title to personal property sold passed is in dispute, it is governed by the intention of the parties, and if there be any doubt as to what their intention was, it is a question of fact for the jury under proper instructions. Clark v. Shannon & Mott Co., 117 Iowa, 645, 91 N. W. 923; Carlson v. Crescent W. & B. Mfg. Co., 20 Idaho, 794, 120 Pac. 460; Johnson v. Tabor, 101 Miss. 78, 57 South. 365; Cook & Laurie C. Co. v. Bell, 177 Ala. 618, 59 South. 273; Wesco Supply Co. v. Town of Allerton, 156 Iowa, 695, 137 N. W. 1046; Kendrick v. Hochradel, 167 Mich. 179, 132 N. W. 521; Seldomridge v. F. & M. Bank, 87 Neb. 531, 127 N. W. 871, 130 N. W. 848, 30 L. R. A. (N. S.) 337; Hoffman v. Gosline, 172 Fed. 113, 96 C. C. A. 318; Idaho Implement Co. v. Lambach, 16 Idaho, 497, 101 Pac. 951. In Carlson v. Crescent Wooden-ware & Box Mfg. Co., above cited, it is held:

"The question of when the title to personal property passes on sale thereof, will be governed by the intention of the parties, and is a question for the jury, under proper instructions."

In Idaho Implement Co. v. Lambach, supra, it is held:

"In determining the question as to whether the title has or has not passed by the contract, the primary and first consideration is the intention and understanding of the parties as gathered from the contract and the circumstances surrounding the sale. If, under all the evidence, different minds might honestly reach different conclusions as to whether the sale was completed or merely an executory agreement to sell, then the question is one of fact, and should be left to the jury."

In Seldomridge v. Farmers' & Merchants' Bank et al., supra, it is held:

"Where a specified quantity of grain identical in kind and uniform in value is sold from a mass, a separation is not necessary to vest title where the intention of the parties that title shall pass is clearly manifested. Whether title to personal property sold, but not actually delivered, passes to the vendee depends upon the intent of the parties to the transaction, and the question of intent is rather one of fact than of law."

In Hoffman v. Gosline et al., above cited, it is held:

"The time of passing title to chattels sold depends on the intention of the parties." And "where an action for goods sold depended on whether the title passed, the court's failure to submit to the jury the precise lines of inquiry into the facts from which they were to determine such issue was prejudicial error."

But the defendants insist that this contract is plain and certain, and is in writing, and that it is not a quesion for the jury, and quote in support of their contention from Farmers' National Bank of Sheridan v. Coyner et al., 44 Ind. App. 335, 88 N. E. 856, as follows:

"But, where upon a material point there is a failure of proof by the party having the burden, a court may, as a matter of law, instruct the jury in favor of the other party to the issue, and where the facts are admitted by the pleadings, or otherwise, or where the evidence is documentary, and its interpretation a matter for the court, and there is but one conclusion deducible therefrom, the court may, as a matter of law, direct a verdict in accordance with the fact."

This doctrine is unquestionably sound, but under it was the court justified in the case at bar in sustaining the demurrer and taking the evidence from the jury? In other words, while the evidence as to the intention of the parties in the case at bar was largely documentary, can it be said that there was but one conclusion deducible therefrom, and that that conclusion was that title had not passed? We think not, but, on the other hand, we think that the defendants' language, and conduct, as revealed by the evidence, strongly indicate that they claimed title, and had assumed control of the property in question. The defendants having failed to sell through their local salesman, they seem to have made the plaintiff their agent to try to negotiate a sale for them for a part of the seed. They declined to accept the price which plaintiff was able to procure for them, and said they had rather pay storage than to sell at that time at such ruinous prices. They agreed to pay reasonable storage, and in another communication, not heretofore quoted in this opinion, they indicate that they had rather do this than to take the risk of having to pay demurrage on the seed at Ft. Worth, since their warehouse and elevator there were full, and they had no place in which to unload the seed, if it was shipped to them there.

Defendants also quote in their brief from the syllabus in Priest v. Hodges et al., 90 Ark. 131, 118 S. W. 253, which holds in part that:

"Where, by the contract of sale, there remains something to be done as between the seller and buyer to ascertain the quantity or price of the article, the title does not pass; but, where it was the intention of the parties that the article should be considered as having been delivered, the intention will govern, though there remains something to be done to determine the quantity or value thereof. The fact that a seller has performed all he can do does not show a sale, but it is neces-

sary to show that the buyer actually accepted the chattels, and, until the buyer does some act evincing an intention to accept, the title remains at the risk of the seller."

This is in harmony with all the authorities we have examined, and holds, in substance, that the intention of the parties shall govern, and that the intention of the buyer is to be gathered from his acts, and to be determined by whether or not he has evinced an intention to accept title. It would have been rather unusual, we think, for the defendants, in the case at bar, to have agreed to pay the plaintiff storage on what they considered was its own grain, stored in its own warehouse. But they did agree to pay storage on the grain in controversy. Besides, there are other circumstances, which not only indicate an intention on the part of the defendants to accept title, but that they considered that title had passed. And upon consideration of the entire record, it seems to us unreasonable to say that there is but one conclusion deducible from the conduct of the parties, and that that conclusion is that title had not passed. We think the court erred in sustaining the demurrer to the evidence.

2. The only other assignment urged is that the court erred in refusing to permit the plaintiff to prove that the seed in controversy, after defendants refused to settle for same, were attached by the plaintiff as the property of the defendants, under an order of attachment. But in this ruling we think the court was right. That was the act of the plaintiff, not the defendants, and the defendants can in no way be bound by it. The defendants are bound by their own words, acts, and conduct, but to permit the plaintiff to profit by its own independent act, after the controversy had arisen, would be, in effect, to countenance self-serving conduct, which the law will not permit.

The judgment is reversed, and the cause remanded for a new trial.

All the Justices concur.