The Harris Photographic Supply Company (a corporation) v. Maxwell M. Fisher.

*Pleading—Statute of frauds—Damages.*

1. A declaration in a suit for the breach of a contract for the sale of personal property exceeding $50 in value, in exchange for real estate to be conveyed to the vendor, need not aver that the agreement in relation to the real estate was in writing, nor that there was a part delivery and acceptance of the personal property, or any payment made on account of its purchase, in order to take the case out of the statute of frauds; such facts, if existing, being matters of proof on the trial.

2. Both the *delivery* and *acceptance* of personal property must be established in order to save the sale from the operation of the statute of frauds, and the burden of proof rests upon the vendor.

3. Where, under an arrangement for the exchange of personal property for real estate, a bill of sale is to be executed by the vendor, and the vendee receives and accepts the goods, but refuses to convey the real estate, the agreement not being in writing, the title to the personal property passes without such bill of sale, and the vendor can recover its value.

Error to Wayne. (Gartner, J.) Submitted on briefs April 23, 1890. Decided June 6, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Corliss, Andrus & Leete,* for appellant, contended:

1. When some specific thing is to be delivered in payment for land, the agreement to so deliver, and the breach, must be specially pleaded; citing *Butterfield v. Seligman*, 17 Mich. 95; *Nugent v. Teachout*, 67 Id. 572; *Bradley v. Levy*, 5 Wis. 400; and an action on the common counts will not lie where proof of the breach of contract is necessary to a recovery; citing *Phippen v. Morehouse*, 50 Mich. 538.

2. The objection that the declaration fails to state a cause of action is not waived by pleading to the merits instead of demurring,

but the point may be made by an objection to the introduction of any evidence at the trial; citing *Stoflet v. Marker*, 34 Mich· 313.

3. The allegations in the special count are insufficient to take the case out of the statute of frauds, in that the receipt and acceptance of the property are not alleged; citing *Pierson v. Spaulding*, 61 Mich. 90.

4. Under the agreement, the delivery by the plaintiff of a bill of sale to the defendant was a condition precedent to the transfer of title; citing *Lingham v. Eggleston*, 27 Mich. 324.

5. Assuming that defendant took possession of the property, as claimed by the plaintiff, he had the right, within a reasonable time, to tender it back and rescind the contract; citing *Martin v. Ash*, 20 Mich. 167; *Hunt v. Sackett*, 31 Id. 19; *Wright v. Dickinson*, 67 Id. 589; *Harris v. Piatt*, 64 Id. 105; *Moffitt v· Shields*, 67 Id. 610.

*Charles Flowers*, for plaintiff, cited no authorities.

LONG, J. Plaintiff is a corporation organized and existing under the laws of this State, and doing business in Detroit. This action is brought in *assumpsit* to recover the price and value of certain personal property claimed to have been exchanged with defendant for real estate.

The contract set out in the declaration is that on July 23, 1888, the plaintiff sold to defendant, and the defendant bought of plaintiff, a photographic gallery, including the stock, fixtures, furniture, negatives, and everything connected therewith, and used in connection with the carrying on of the business of photographing in Detroit; and in consideration of such purchase and sale the defendant agreed to transfer to the plaintiff certain real estate situate in Bay City, Mich., of the value of $1,600; and the plaintiff on the day last aforesaid delivered to the defendant the possession of said gallery, and the fixtures and appurtenances connected therewith, and the defendant took possession of the same; yet the defendant has neglected and refused to transfer the said property so as agreed to be transferred in payment for said photographic

gallery, although often requested so to do; whereby the said defendant has become liable to pay to the said plaintiff the sum of $1,600 and interest, and in consideration of the premises then and there promised the plaintiff to pay it, etc. The common counts are also added.

The plea was the general issue, and thereunder defendant gave notice of several matters of defense, and, among others—

1. That no agreement in writing was entered into between the parties.

2. That there was no delivery of possession of goods and property, and that the defendant only took the keys of the gallery to make an examination and inventory of the property, and upon such examination and inventory, finding the representations of the plaintiff in reference to such property untrue, defendant returned the keys to the plaintiff.

3. That no possession or right of possession was ever delivered or secured to the defendant.

4. That defendant never promised or agreed to pay to plaintiff the sum of $1,600.

5. That the contract for the exchange of land as alleged in the declaration was void under the provisions of section 6181, How. Stat., the same not being alleged to have been in writing.

6. That the claimed sale of goods, being for the price of $50 or more, is void, under the provisions of How. Stat. § 6186, the purchaser not having accepted or received any of the goods, or given anything in earnest to bind the bargain in part payment, and there being no note or memorandum in writing of the bargain made, signed by either of the parties.

The cause was tried in the circuit court before a jury, who found a verdict in favor of the plaintiff. Defendant brings error.

It appears that, at the commencement of the trial, defendant's counsel objected—

"To any evidence being received under the declaration, for the reason that it does not allege a sufficient cause of action to enable the plaintiff to recover; that the declara-

tion does not contain an allegation sufficient to take the case out of the statute of frauds, and does not allege that defendant retained possession of the gallery, and converted it to his own use."

The objection was overruled, and the cause proceeded to trial. The court very properly overruled this objection. The declaration need not set out that the promise in relation to real estate was in writing, or that there was part delivery of the property, or anything paid in earnest on the purchase of the personalty. This is matter of proof, and may be shown on the trial. The declaration set out a cause of action. *Elting v. Vanderlyn,* 4 Johns. 237; *Dayton v. Williams,* 2 Doug. 31.

The case was submitted to the jury upon the question of delivery to the defendant of the personal property sued for, and they have found the fact in favor of the plaintiff, and we cannot disturb that question, if there was any competent evidence to sustain the finding. Taking the whole evidence introduced by the plaintiff, we are satisfied that there was some evidence upon which the jury could very properly say that the property was aliened to the defendant, and was accepted under the contract. It appears that the defendant owned the building in which the gallery was situate, and rented it to the plaintiff. The business of the gallery was being carried on for the plaintiff by Mr. Friend. He states that the defendant talked with him about exchanging some real estate in Bay City for the gallery, and wanted him to see Mr. Harris, the president of the plaintiff company, and learn if such an exchange could be made; that he told the defendant the gallery was worth from $1,400 to $1,600, and he would see Mr. Harris about the exchange; that he saw Mr. Harris, and the parties having afterwards met, the witness, being present, said to Mr. Harris:

" Here is Mr. Fisher, and you gentlemen better settle the question about the gallery and the real estate."

That Mr. Harris said:

"Mr. Fisher, you make out the deed, and we will finish this up at once;" when Mr. Fisher said: " There is another room there somewhere,—the bromide room, they call it,—and I want to go and see what is in there." The witness then says: " They gave me the key, and we went together, and saw what was in there. I did not know what was in there before, and my estimate did not include that. I left Mr. Fisher there, and went home."

Mr. Harris, the president of the plaintiff company, gave his version of the affair, as follows;

" Mr. Friend made the remark: ' Now, you two gentlemen settle this business up.' So Mr. Fisher and I stepped to the front part of the store, and talked over the matter for a moment or two, and he agreed to give me a deed of certain property in Bay City, valued at $1,675. He was to make his deed the next day, and we were to make a bill of sale. That was the conversation. I had never met Mr. Fisher prior to this in regard to it. Mr. Fisher inquired if there was any other property besides what there was in the gallery. I said yes, there was one camera box, 20x24, that was in Mr. Friend's gallery temporarily, and there were bromide rooms on Grand River Ave., and he said if he bought it he wanted the bromide rooms transferred to his gallery. I said that was satisfactory, we would transfer the bromide rooms at our expense, and put all inside the gallery on Woodward avenue. Mr. Fisher said he would give me a deed of this property in Bay City, and we were to give him a bill of sale, and the transaction was closed in that manner. I gave him the key to go and look at the bromide room. He came back, and said he wanted the stuff in the bromide room sent right over that day. We then went and put everything from the bromide room in the gallery. The key to the gallery was in possession of Mrs. Friend. Mr. Fisher said he wanted the key, and the agreement was, if he bought the gallery, Mrs. Friend was to deliver the key to him.

" The next day Mr. Fisher came in, and wanted to know how the deed should be made out. He said, our

institution being an incorporated company, if the deed was made out to the corporation, it would require the signatures of the wives of all the stockholders, and he would like to know whether it should be made to the corporation or to me. I told him I would let him know in the afternoon. He came in again in the afternoon, and I told him he could make the deed to me personally. I saw him again within a day or two. He came in with the deed all made out, with the exception of the signature, as I understood it at the time, of his son's wife. Instead of having the property in his own name, it seemed to be in his son's name. He said he would go out and get the signature, and transfer it to me the next day. I did not see Mr. Fisher again for quite a while. He did not pay any attention to our requests for the deed. About four or five weeks after the transaction a gentleman brought me a sealed envelope, and inside was the key. I returned the key to him through the mail. I never saw Mr. Fisher again until in court. Some days after this bargain Mr. Fisher came into the store, and wanted me to get an operator for him. He said he understood Mr. Friend could not work for him, and he wanted an operator to run the gallery for him. I afterwards told Mr. Fisher I had written to an operator, and got a reply that he would be in on Monday."

It appears that this first conversation between the parties took place on July 23, 1888. Mr. Harris also testified that he never gave the bill of sale, and never received any deed. After the key was returned, Mr. Fisher commenced suit against the plaintiff for the collection of the rent of the building. Plaintiff also gave evidence tending to show that the defendant stated to a Mrs. Nellie Goodwill that he had traded some property in Saginaw for the gallery, and that he moved a couch from the gallery to his own rooms in the same building, and then returned it to the gallery, and asked Mrs. Goodwill not to say anything about it, because he had concluded not to buy the gallery if he could get out of it. Plaintiff also gave evidence tending to show that defendant called upon Mrs. Friend, and got the key to the gallery, and

told her he had bought it.   Substantially this is the claim of the plaintiff.

Defendant insists that the contract was not completed; that he only took the key to examine the property in the gallery, and, having made an examination, and procured an inventory to be made by a Mr. Kier, who was familiar with such property, he ascertained the property was only worth $614.15, and was not of the value of $1,400 to $1,600, as represented by Mr. Friend; that, finding upon such examination how little the property was worth, he returned the key, and refused to complete the contract.

The court submitted the facts very fairly to the jury upon the respective claims of the parties, as follows:

"And it is claimed on the part of Mr. Fisher that he did not accept these goods; that there was no acceptance on his part; that he merely took the key for the purpose of taking an inventory.   If that is the fact, that would be an end to the case.   If you determine that to be the fact; that there was no acceptance on his part; that he did not enter into possession of them; that he merely received the key for the purpose of taking an inventory, —that would be an end to this case, and your verdict would have to be for the defendant."

It is conceded that the contract for the exchange of the real estate is void, because not in writing.   It is also conceded that the contract for the exchange of the goods is void, not being in writing, and the value being above $50, and no part of the purchase price paid, unless there has been a delivery of the whole or a part of the goods and an acceptance.   It is clearly settled that both acceptance and actual receipt are necessary, and the burden of proving them rests upon the person trying to set up the contract.   They are both facts, and the circumstances which go to make up acceptance and actual receipt are for the jury.   8 Amer. & Eng. Cyclop. Law, 730.

Had the action been brought in this case by the plaintiff to recover the possession of the goods, upon a refusal of the defendant to deliver up the key to the building or the goods, plainly it must have been held, under the finding of the jury, that there was evidence of such delivery over, and acceptance by the. defendant, as to pass title absolutely to him. The learned counsel for defendant say, in their brief, that "this was a suit upon an executory verbal contract, not performed on either side." If this was so, then no recovery could have been had. But the claim of plaintiff is that there was part performance; that there was a delivery of goods to the defendant, which he accepted,—and the jury, under a fair submission, have found that to be so. This would take the case out of the statute of frauds. It is true that, under the first arrangement, a bill of sale was to be made of the goods, and a deed of real estate to be executed and delivered. But the title to the goods would pass without the bill of sale, if there was a sufficient delivery and an acceptance. Counsel seek to bring the case within the rulings of this Court in *Sheley v. Whitman*, 67 Mich. 397. In that case, however, there was no pretense of a delivery of any part of the goods, which were of the value of $200. It was said in that case that the purchaser never accepted or received any article, and never paid anything, and that the letter, which was the only writing, did not show what the contract was. In the present case there was not only a delivery, but an acceptance. We see no error in the record.

The judgment must be affirmed, with costs.

The other Justices concurred.