KENDRICK v. HOCHRADEL.

1. SALES — STATUTE OF FRAUDS — DELIVERY AND ACCEPTANCE — PRINCIPAL AND AGENT.

In an action for the purchase price of a horse, upon evidence, although contradicted, showing that defendant and his agent went to plaintiff to purchase two horses, that plaintiff's horses were unbroken, and plaintiff's agent refused to halter-break the animals before selling, that defendant stated his agent would take charge of and break them, and he selected two which were examined by defendant who expressed himself as satisfied, that defendant's agent under his direction bought a rope, made halters, and, catching one of the horses, attached the halter to its neck and led it into the highway where it fell and broke its neck, it was proper to refuse to direct a verdict for defendant because there was evidence of delivery and acceptance, although the price had not been paid.

2. SAME.

It is well settled that a delivery of a part of the property satisfies the statute of frauds.

3. SAME—PRINCIPAL AND AGENT—INSTRUCTIONS TO JURY.

Nor did the court, in leaving to the jury the question of agency, commit any error in charging that they might consider the

instructions, if any, given by defendant to his alleged agent relative to the horse, or any claimed ratification of his acts done in defendant's presence, or whether defendant brought him there to assist in taking charge of the horses, or in breaking them.

Error to Wexford; Lamb, J. Submitted June 19, 1911. (Docket No. 92.) Decided October 2, 1911.

Assumpsit by Eugene C. Kendrick against Charles Hochradel for the purchase price of a horse. Judgment for plaintiff. Defendant brings error. Affirmed.

*John J. Tweddle*, for appellant.

*Gaffney & Miltner*, for appellee.

STONE, J. This is an action of assumpsit for the purchase price of a horse which the plaintiff claims to have sold and delivered to the defendant. The facts in the case are much in dispute. The plaintiff claims that on September 7, 1909, the defendant came to the village of Mesick to buy a team of western horses from the plaintiff, and that, not knowing a great deal about horses, or at least desiring the assistance of some one, the defendant brought with him one Newman, to pick out and take charge of such horses as he might purchase; that defendant and Newman, with others, went with the agent of the plaintiff, one Brown, to the yard of the plaintiff, where a number of plaintiff's horses were; that defendant and Newman selected two horses; that something was said about halter-breaking the horses, which were wild; that plaintiff's said agent stated that he would not halter-break them, and that they were to be sold right there in the yard, and all that he would do was to rope them; that defendant replied that it would be just as well, as he had brought Mr. Newman along to break the horses, and that he (Newman) would take charge of them from the start.

The horses selected were a bay and a black. The price

of the former was fixed at $90, and that of the latter $80. Plaintiff claims that the two horses were separated from the others and put in a pen by themselves, and were examined by the defendant and Newman, who expressed themselves as satisfied with the horses; that Mr. Newman, under the direction of the defendant, bought a rope, from which halters were made, with which to lead the horses; that the bay horse was caught by the plaintiff's agent, assisted by others; one of the halters was put upon the bay horse, which was taken charge of by Newman, in the presence of the defendant; that the defendant opened the gate leading to the highway, and Newman drove the horse (while holding the halter attached to the horse) into the highway, where the horse reared and fell, breaking his neck, which caused his death. It was the claim of the plaintiff upon the trial that in taking charge of the horse Newman was acting for, and as the agent of, the defendant, and that the defendant understood that the horses were to be delivered to him there in the yard, and that in so taking charge of the horse by his said agent the horse became the property of the defendant; that there was a delivery and acceptance of the horse; and that the risk of loss and duty of payment fell upon the defendant.

The claim of the defendant was that the horse was not delivered to him, or to any person for him, and that neither he, nor any one for him, ever accepted the horse. He further claimed that he was not to take the horse, or to pay for it, until it had been halter-broken, and that the sole and only purpose of putting the rope on the horse was to break it to the halter. There was a sharp conflict in the testimony, and numerous witnesses were examined whose testimony tended to support the respective claims of the parties.

At the close of the plaintiff's case, the defendant moved for a directed verdict in his favor, upon the ground that, because of the statute of frauds, the plaintiff had not made a case, in that he had not proven a delivery and acceptance of part of the property sold. The trial judge was of

the opinion that there was testimony in the case to go to the jury upon both of the questions as to whether there was a delivery and an acceptance. The trial proceeded and resulted in a verdict and judgment for the plaintiff for the value of the bay horse. The defendant has brought the case here upon bill of exceptions, and there are 13 assignments of error.

The first, second, and twelfth assignments of error relate to the refusal of the court to direct a verdict for the defendant. We are of opinion that there was no error of the court in its ruling upon that branch of the case. The third, fourth, and fifth assignments of error complain of rulings in the admission of testimony. It is sufficient to say that we find no error here.

The sixth assignment of error relates to the charge of the court, in this: After stating the plaintiff's claim, the court said:

" If you find by a fair preponderance of the evidence that the facts as above outlined are these, then your verdict will be for the plaintiff in the sum of $90. There has been some testimony that this was to be the sale of two horses, but I charge you, as matter of law, that if the bay horse was selected and delivered to Mr. Hochradel, and that after coming into his possession, by himself or through his agent, a loss was sustained, that loss would be Mr. Hochradel's loss, and the horse would be his horse, notwithstanding the fact that the two horses were not delivered. In other words, the delivery and acceptance of this part binds Mr. Hochradel to pay the price of so much as was delivered and accepted, if you find there was a delivery and an acceptance of the horse by Mr. Hochradel."

It is well settled that a delivery of a part of the goods satisfies the statute. If the testimony of the plaintiff's agent and that of his other witnesses was true, there was a delivery and acceptance of the horse, and thus the case would be taken out of the operation of the statute of frauds, and, whether true or not, was a question for the jury, and was properly submitted. The following cases are in point: *Alderton* v. *Buchoz*, 3 Mich. 322; *Whaley*

v. *Gale*, 48 Mich. 193 (12 N. W. 33); *Rasch* v. *Bissell*, 52 Mich. 455 (18 N. W. 216); *Richards* v. *Burroughs*, 62 Mich. 117 (28 N. W. 755); *Harris Photographic Supply Co.* v. *Fisher*, 81 Mich. 136 (45 N. W. 661); *Toohey* v. *Plummer*, 65 Mich. 688 (32 N. W. 897). We find no error in this part of the charge. *Lobdell* v. *Horton*, 71 Mich. 681 (40 N. W. 28).

The seventh and eighth assignments of error relate to the charge of the court upon the subject of agency, as follows:

"As to whether or not Mr. Newman was the agent of Mr. Hochradel, as the plaintiff claims, and acting for him, that is a question of fact which you are to determine from all the facts and circumstances in the case. The fact that Mr. Newman says that he was not the agent is not binding upon Mr. Kendrick. It is for you to say from the testimony whether Mr. Newman was in fact acting for Mr. Hochradel, either as agent or employé, and in passing upon this question it is your duty to take into consideration the instructions that Mr. Hochradel gave to Mr. Newman relative to the horse delivered at the time, if you find that he gave any instruction along that line. On the question of agency, you have a right to consider whether there is any testimony to show ratification—that is, the acceptance or acquiescence by Mr. Hochradel in what Mr. Newman did; that is, did Mr. Hochradel consent to the action in his behalf by Mr. Newman? You have also a right in passing upon this question to consider whether there was an original authority; that is, whether Mr. Hochradel brought Mr. Newman there for the purpose of assisting him in taking charge of the horse in the yard, as has been testified to by the plaintiff. You have also the right to consider whether Mr. Hochradel held out to the world, and to Mr. Brown, that Mr. Newman was his agent, to do the things Mr. Newman did; that is, to take charge of and break the horse or take charge of the horse for Mr. Hochradel from the time the rope was given him in the yard there, as well as all other facts and circumstances in the case."

In view of the testimony tending to support the plaintiff's claim, we are of opinion that the question of agency was properly submitted to the jury. *Wilkinson* v.

*Spring Works*, 73 Mich. 405 (41 N. W. 490); *Hirsch-mann* v. *Railroad Co.*, 97 Mich. 384 (56 N. W. 842). The conduct and acts of Newman in the presence of the defendant, and apparently acquiesced in by the defendant, were certainly proper subjects for the jury to consider. There was testimony in the case tending to show that the minds of the parties met as to the terms of the sale. The acts of Newman, in the presence of the defendant, in taking charge of the bay horse and leading or driving it from the yard into the highway, if assented to by the defendant, were, in the law, the acts of the defendant, and it was proper for the jury to consider such acts and conduct as bearing upon the questions of delivery and acceptance.

Counsel for defendant contends that this was to be a cash sale when consummated, and that the deal with defendant could not be completed until plaintiff's agent had delivered the goods and collected the money therefor. We do not think that this proposition is controlling here. In *Harris Photographic Supply Co.* v. *Fisher, supra,* there was a verbal agreement for the exchange of personal property exceeding $50 in value for real estate. The vendee received and accepted the goods, but refused to convey the real estate; the agreement not being in writing. It was held that the title of the personal property passed, and the vendor was allowed to recover its value. The court said:

" But the claim of plaintiff is that there was part performance; that there was a delivery of goods to the defendant, which he accepted,—and the jury, under a fair submission, have found that to be so. This would take the case out of the statute of frauds."

As we have already indicated, there was testimony to show that Newman was the agent of the defendant for the purpose of taking charge of the horse at the time of the claimed delivery and acceptance in the yard, and that defendant said that Newman would take charge of the horse for him from the start. There was testimony to the

effect that the sale was to be made when the horses were roped in the yard; that they were not to be halter-broken nor led out of the yard, but the purchaser was to take charge of them there.   These claims of the plaintiff were all denied by the defendant, and the issue was fully and fairly submitted to the jury.

We have examined the assignments of error not here specifically referred to, and are of the opinion that there is no reversible error in the record, and that the judgment of the circuit court should be affirmed.

MOORE, McALVAY, BROOKE, and BLAIR, JJ., concurred.