BOWEN *v.* CHANDLER.

1. Appeal and Error—Trial—Saving Questions for Review—Motions.

After a witness has interjected improper matter, a motion to strike out is necessary to review the point.

2. Contracts—Implied Agreement—Frauds, Statute of.

In an action for the value of a boiler and engine, which plaintiff orally traded to defendant for land that defendant refused subsequently to convey, evidence as to the oral transaction was admissible, notwithstanding the statute of frauds, to show the relation of the parties and defendant's acceptance of the property.

3. APPEAL AND ERROR—BRIEFS—SUPREME COURT PRACTICE.
   Criticisms of the conduct of plaintiff's counsel will not be considered if the brief contains no reference or citation to the record.

4. EVIDENCE—CONCLUSIONS.
   It was not erroneous to refuse to strike out as a conclusion the testimony of a witness that defendant wanted to buy the engine, and he and plaintiff spoke about a deal for some land, and defendant said he would have his foreman look at the engine and, if it was satisfactory, would take it and exchange, as the witness understood it.

5. TRIAL—ELECTION OF COUNTS.
   The court did not err in refusing to require plaintiff to elect whether to rely on a special count or on the common counts, if plaintiff could recover under both or either.

6. CONTRACTS—IMPLIED CONTRACT—DELIVERY.
   Defendant's receipt of the engine, use and retention for three years, was evidence of acceptance sufficient to sustain a verdict for plaintiff.

Error to Cheboygan; Shepherd, J. Submitted October 14, 1912.. (Docket No. 38.) Decided November 8, 1912.

Assumpsit in justice's court by David Bowen against Merritt Chandler for the value of an engine and boiler. From a judgment for plaintiff defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Henry, Henry & Henry*, for appellant.
*C. S. Reilley*, for appellee.

KUHN, J. This is an action brought in assumpsit to recover the value of an engine and boiler, which, it is claimed, was exchanged by the plaintiff with the defendant for certain real estate. The declaration filed in the cause contains the following count:

" For that whereas, said defendant, before the commencement of said suit, was indebted to plaintiff in the sum of $300 lawful money of the United States for divers

goods, wares, and merchandise of the said plaintiff, to wit, one engine and boiler, theretofore delivered to the defendant at his special instance and request under contract of exchange of property in that said defendant then and there promised to deed to said plaintiff certain real estate situate in the county of Cheboygan and State of Michigan, and in exchange therefor plaintiff was to deliver said engine and boiler, and that said plaintiff did deliver said engine and boiler to said defendant, and then and there on numerous occasions requested said defendant to transfer said real estate to said plaintiff, and that he then and there neglected and refused so to do, and has ever since retained said engine and boiler, to plaintiff's damage of $300, and therefore said suit is brought."

In addition to this, the declaration contains the common counts. The bill of particulars filed also claimed taxes for the year 1885, amounting to $55. The defendant pleaded the general issue and the statute of limitations as to the item of taxes. No evidence was offered with reference to the taxes. On trial had, a verdict was rendered in favor of the plaintiff in the sum of $280.25, and defendant reviews judgment had thereon in this court by writ of error.

The deal which gave rise to this controversy was had some time in 1908. There is considerable conflict in the testimony as to what the understanding of the parties was. At that time the engine and boiler was at the foundry and machine shop of Henry Deane for repairs. David Bowen testified with reference thereto as follows:

"I met Mr. Chandler, and I told him that I would like to trade him this engine for a quitclaim deed of the S. ½ of the N. E. ¼ of section 36, town 35 N., range 1 E. He said he would send Mr. Minnick to look at the boiler and engine, and, if it suited Mr. Minnick, that he would make a trade. He sent him, and I went down with Mr. Minnick, who looked it over and said that he would take it out and try it for five or six days, and, if it did the work, that they would keep it, and they did keep it for about three years. I was not there at the time Mr. Chandler's man took the boiler and engine away. I told Mr. Deane to deliver it to him. The boiler and engine was at the foundry, and Deane was the foundry man. It has been there practically all winter. * * * I agreed,

if he would deed this land over to me, to turn over to him this engine and boiler any time for it. That was the talk I had with him. That contract between Chandler and myself was not in writing. I expected him to turn the deed over every day. I never had any contract in writing with him in regard to the engine and boiler. When I had this talk with Chandler, there was nothing said about the price of the engine. He was to deed me that piece of land, and give me enough to straighten up with Deane if it suited him. And he kept it."

Merritt Chandler, the defendant, testified as follows:

"*Q.* Did you ever have an agreement with Bowen by which you were to deed him a description of land which he mentioned and take in pay therefor this boiler and engine?

"*A.* Not completed; no, sir, not completed.

"*Q.* Did you ever have any agreement by which you purchased this boiler and engine?

"*A.* No, sir; anything further than talking of doing it, or taking it.

"*Q.* What talk did you have with Mr. Bowen in regard to the engine and boiler, and this land?

"*A.* I don't remember that we had any until after the engine had been taken out to the farm; but it was about that time—soon afterwards, and possibly before, as he states.

"*Q.* Do you remember the circumstances?

"*A.* Oh, yes; I remember the circumstances. I know it was to be taken there—I don't know when it was taken —didn't know until it had been there several days.

"*Q.* Go on with your statement of your talk.

"*A.* Why, after, if the engine proved satisfactory, we was to make a deal on the land. The engine was tried for about a week, or three or four days, sawing wood, and then my foreman told me, I asked him if it was satisfactory, and—

"*The Court:* State whether or not it was satisfactory to him.

"*A.* It was not satisfactory.

"*The Court:* I quote his testimony correctly, do I— that his conversation with Mr. Bowen was that it should be satisfactory? Is that what Mr. Chandler swore to? What did he say his conversation with Mr. Bowen was?

"*Mr. Hull:* That the engine was to be satisfactory?

"*A.* Yes, sir; that the engine was to be satisfactory. I never had a contract with Bowen in writing.

"*Q.* Was there anything further said in regard to this deal of the land? Was that the complete deal which you have stated?

"*A.* No, sir; there was an after consideration. On account of this engine not being satisfactory, I proposed to Mr. Bowen that he deed me the water privileges, water rights of flooding certain lands that he had along Black river, and that was it. I said:

" 'As soon as you get that deed so that you can give me a good deed.'

"(He only had a tax title at that time on part of the land.) I said:

" ' As soon as you get that completed and right, we will make the deal. I will make the deed to you for the other land, and the engine could be put in as part of the deal.'

" That is, it would be considered in the deal.

"*Q.* Do you know how much the engine was used on your farm?

"*A.* I don't know of its being used only 3 or 4 days in sawing wood.

"*Q.* Why wasn't the engine returned?

"*A.* Nobody asked me to return it. I was not requested to return it."

The defendant asks for a reversal of the judgment rendered, alleging by assignments of error that the court erred in four particulars:

(1) In respect to the admission and rejection of evidence.

(2) Because he denied the motion on behalf of the defendant for a direction of a verdict.

(3) Because the court erred in not requiring the plaintiff to elect whether recovery should be had under the special or common counts.

(4) Because the court erroneously charged the jury with respect to the law involved in the cause.

Admission and Rejection of Evidence. (*a*) Plaintiff, while being cross-examined, was asked:

"*Q.* Did you ever tell Mr. Minnick not to turn this engine over to any one while it was?

"*A.* No. Why didn't you bring Minnick down or give us a chance to get him?"

The latter part of the answer was excepted to, but no motion was made to strike it out. Such a motion should have been made if counsel desired to have it stricken.

(*b*) Counsel moved to strike out all the testimony relative to the sale of real estate because it was not in writing. This testimony was brought out when witnesses were testifying as to the verbal agreement, and, while it is true that no recovery could be had on the contract itself and the verbal contract is void because not in writing, still it was proper to show what the verbal contract was as bearing upon the relations of the parties and upon the question of a delivery to and the acceptance by the defendant of the property in controversy.

(*c*) Criticism is made of conduct of counsel in asking of the defendant why a witness was not brought to court. No reference is made to the record, and we will not consider it. *Zimmerman Manfg. Co.* v. *Dolph,* 104 Mich. 281 (62 N. W. 339).

(*d*) Tilden Ratliff, a witness, in testifying as to a talk between plaintiff and defendant, said:

" Mr. Bowen—Mr. Chandler seemed to me he wanted to buy the engine, and they spoke something about a deal for some land, and Mr. Chandler said he would have his foreman, Mr. Minnick, look at the engine, and, if it was satisfactory to him, he would make the deal, is the way I understood it."

The refusal of the court to strike out this testimony on motion made by counsel because it stated a conclusion is not reversible error.

**Election of Counts.** Counsel for appellant in his brief says:

" Undoubtedly, if both counts were good, plaintiff would have a right to rest on either or both."

Both counts are good, and no error was made because of failure to elect.

Failure to Direct Verdict and Charge of the Court. As there is no question about the delivery of the property to the defendant, it seems to us that the sole question involved in this controversy was whether the conduct of the defendant or his agents with reference to the boiler and engine after delivery amounted to acceptance. It is unquestioned that they were in possession of the defendant for about three years, and the plaintiff testified:

"Up to March, 1911, Mr. Chandler used the engine on his farm pumping water and cutting wood, and doing anything he wanted to use power for. Mr. Chandler's farm is a mile and a half north from the foundry. I saw it at his farm at different times. Up to the time that I commenced suit, Mr. Chandler used the boiler and engine on the farm, pumped water with it, and cut wood—anything that he wanted to use power for."

Tilden Ratliff testified:

"I have seen the engine in Mr. Chandler's barnyard in 1908 and 1909 cutting wood."

While the defendant testified that he only knew of the engine being used three or four days in sawing wood, still the question of whether his acts amounted to an acceptance was properly submitted to the jury.

"If one sends or delivers goods to another, under circumstances which indicate that a sale is intended, but no price is named, and the other uses or otherwise deals with them as his own, a sale for a reasonable price is implied." 35 Cyc. p. 59.

In the case of *Caulkins* v. *Hellman*, 47 N. Y. 452 (7 Am. Rep. 461), cited by counsel for appellant, the court said:

"The receipt of the goods, without an acceptance, is not sufficient. Some act or conduct on the part of the vendee, or his authorized agent, manifesting an intention to accept the goods as a performance of the contract, and to appropriate them, is required to supply the place of a written contract."

This question has been passed upon by this court in the

case of *Harris Photographic Supply Co.* v. *Fisher*, 81 Mich. 136 (45 N. W. 661), and cited with approval in the case of *Kendrick* v. *Hochradel*, 167 Mich. 179 (132 N. W. 521). It is practically a parallel case. There was in that case a verbal agreement for the exchange of personal property exceeding $50 in value for real estate. The court said, at page 142 of 81 Mich. (45 N. W. 663):

" It is conceded that the contract for the exchange of the real estate is void, because not in writing. It is also conceded that the contract for the exchange of the goods is void, not being in writing, and the value being above $50, and no part of the purchase price paid, unless there has been a delivery of the whole or a part of the goods and an acceptance. It is clearly settled that both acceptance and actual receipt are necessary, and the burden of proving them rests upon the person trying to set up the contract. They are both facts, and the circumstances which go to make up acceptance and actual receipt are for the jury. 8 Am. & Eng. Enc. Law (1st Ed.), p. 730."

We have carefully examined the instructions to the jury of the learned trial judge, and cannot find any ambiguity which could mislead them as to matters submitted to them for their determination.

We find no reversible error in the record, and the judgment is affirmed, with costs.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.